**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DEBORAH LING                              )
                                          )      Case No. _____
                                          )
                    Plaintiff,            )
                                          )
v.                                        )
                                          )
PHARMACY ALTERNATIVES, LLC                )
                                          )
                    Defendant.            )
                                          )

## COMPLAINT

Plaintiff, Deborah Ling, files this Complaint against Pharmacy Alternatives, LLC ("PA" or "Defendant"). In support, Deborah Ling alleges as follows:

### I.    PARTIES

1.    Plaintiff Deborah Ling is a resident of Kansas and a citizen of the United States.

2.    From about April of 2014 until on or about February 20, 2020, Plaintiff Ling was employed by PA as a licensed pharmacist at its mail order pharmacy in Lenexa, Kansas.

3.    PA is a Kentucky limited liability company headquartered in Louisville, Kentucky.

4.    Defendant PA operates mail order long-term care pharmacies, including one in Lenexa, Kansas.

5.    Defendant PA specializes in providing high-volume mail order prescriptions to individuals with cognitive, intellectual and developmental disabilities in intermediate care facilities, waiver homes, group homes, assisted living, supported-living or foster care.

{00471565;M20-363;MAK }

6.      Most of the patients for whom PA fills prescriptions are mentally disabled, and some also have physical disabilities or other medical conditions so that they are prescribed multiple medications.  Most of them also reside in group residential facilities with at least several other residents with similar conditions and receiving multiple prescription medications. Given the high volume of medications per patient and per facility, the prescriptions are dispensed by being placed in sealed bubble packs.  The bubble packs look like large cards with several rows of plastic bubbles filled with one or more pills. For each administration of the medication to the patient, the staff member or caregiver at the facility pops the pill or pills out of a bubble on the card.  The bubble packs thereby allow each administration of the medication to be more readily tracked by the staff or caregivers at the patients' residential facility than if the pills were administered out of the typical small plastic jars.

7.      In the context of bubble packs, the individual staff member of a pharmacy who "dispensed" the medication was the person who placed the relevant pill or pills into the individual bubbles protruding from the card and then sealed the flat back of the card, thereby locking the pills inside each bubble of the card.

8.      Although the bubble packs allow for more accurate monitoring of the administration of medications at the patient level, at the pharmacy level at PA's pharmacies, the act of dispensing by filling the bubbles with pills and sealing the flat back of the card does not require the dispensing person to log onto any computer program, so that the identity of the dispensing person is not readily available in PA's electronic records.

9.      The majority of Defendant PA's monthly revenues are from submissions

to, and payments from, the Medicare and Medicaid programs.

## II.   JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

11.   Pursuant to 31 U.S.C. § 3732(b), this Court has jurisdiction over the state law claims asserted in this Complaint.

12.   Personal jurisdiction over Defendant PA exists in this Court because Defendant PA transacts business in this District by mailing prescriptions from its Lenexa, Kansas pharmacy.

13.   Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendant PA transacts business in this District, as described above.

14.   As a condition for a pharmacy to receive payment from Medicare Part D or Medicaid for filling a prescription, the pharmacy must comply with certain federal and state statutes, rules and regulations. For example, a prescription is covered for payment from Medicare Part D or Medicaid only if, among other things, the medications are "[d]ispensed by licensed pharmacists and licensed authorized practitioners in accordance with the State Medical Practices Act."  29 C.F.R. § 440.120(a).

15.   Under Kansas law, a person may not dispense prescription medications in the State of Kansas without a Kansas license to do so as a pharmacist, or without having a Kansas registration to do so as a pharmacy technician; simply having a similar license or registration from another State does not suffice.  K.S.A. § 65-1631(a), (d), (e) and (g); K.S.A. § 65-1663(a).

16.   At various times prior to 2020, PA experienced intermittent moderate

staffing shortage at its Lenexa, Kansas mail order pharmacy where Plaintiff Ling worked.

17.    Douglas Russell is a pharmacist and, until the end of 2019, was the Chief Executive Officer of PA.  At all relevant times, Mr. Russell has resided near and typically worked out of PA's Louisville, Kentucky facility.  At all relevant times discussed herein, Mr. Russell did not possess a license or registration to dispense prescription medications in the State of Kansas.

18.    On or about April 16 and 27, 2016, and November 14, 2018, Douglas Russell worked at PA's Lenexa, Kansas pharmacy, during which time his primary duties were dispensing prescription medications. Douglas Russell subsequently made numerous trips to PA's Lenexa, Kansas pharmacy to dispense prescription medications during January, February and March of 2019.

19.    Shelley Remkes is a pharmacist who, at all relevant times, resided near and typically worked out of PA's St. Rose, Louisiana pharmacy. At all relevant times discussed herein, Ms. Remkes did not possess a license or registration to dispense prescription medications in the State of Kansas.

20.    During one or two days of 2016, Ms. Remkes worked at PA's Lenexa, Kansas pharmacy, during which time her primary duties were dispensing prescription medications.

21.    Nanette Wrobel is a pharmacist who, at all relevant times, resided near and typically worked out of PA's Elmhurst, Illinois facility.  At all relevant times discussed herein, Ms. Wrobel did not possess a license or registration to dispense prescription medications in the State of Kansas.

22.     On several days in 2016, 2017 and 2018, Ms. Wrobel worked in PA's Lenexa, Kansas pharmacy, during which time her primary duties were dispensing prescription medications. The dates that Ms. Robel dispensed prescription medications at PA's Lenexa, Kansas pharmacy include on or about:  April 28, 2016; May 17, 18 and 19, 2016; June 29 and 30, 2016; December 14, 28 and 29, 2016; March 21, 2017; October 19, 2017; and June 7 and 8, 2018.

23.     John Brian is a pharmacy technician who, at all relevant times, resided near and typically worked out of PA's Louisville, Kentucky facility.   At all relevant times discussed herein, Mr. Brian did not possess a license or registration to dispense prescription medications in the State of Kansas.

24.     John Brian worked at PA's Lenexa, Kansas pharmacy on numerous occasions during 2016, 2017, 2018 and 2019 during which time his primary duties were dispensing prescription medications.

25.     Lindsey Glass is a pharmacy technician who, at all relevant times, resided near and worked out of PA's Louisville, Kentucky facility.  At all relevant times discussed herein, Ms. Glass did not possess a license or registration to dispense prescription medications in the State of Kansas.

26.     Lindsey Glass worked at PA's Lenexa, Kansas pharmacy on various days during 2018 and 2019 during which time her primary duties were dispensing prescription medications.

27.     Beginning in January of 2019, PA's staffing shortage at its Lenexa, Kansas mail order pharmacy were no longer either moderate or intermittent; beginning in January of 2019 and continuing through about June of 2019, PA's staffing shortages

at its Lenexa, Kansas facility were extreme and consistent.  In response, PA would have pharmacists and pharmacy technicians who were based out of other PA pharmacies, such as in Louisville, Kentucky, St. Rose, Louisiana, or Elmhurst, Illinois, dispense medications at PA's Lenexa, Kansas pharmacy.

28.    During weeks from January through June of 2019, several pharmacists and pharmacy technicians employed by PA would fly in from other states on Monday morning, spend three and a half workdays dispensing voluminous prescriptions at PA's Lenexa, Kansas pharmacy from Monday morning through Thursday at noon, then fly back to Louisville, Chicago (Elmhurst), or New Orleans (St. Rose).

29.    The pharmacists and pharmacy technicians employed by PA who dispensed voluminous prescription medications, typically from Monday morning through Thursday at noon during various weeks from January through June of 2019, as described above, included: Douglas Russell (pharmacist and CEO of PA); Nanette Wrobel (pharmacist); John Brian (pharmacy technician). Again, each of these individuals possessed no Kansas license or registration to dispense prescription medications in the state of Kansas.

30.    From January through July of 2019, Plaintiff Ling repeatedly raised concerns to CEO Russell and Director Varnado about PA having unlicensed and unregistered personnel dispensing prescription medications in the state of Kansas in contravention of Kansas law. In each instance her concerns were ignored and brushed aside. On several occasions, Mr. Varnado responded to Plaintiff Ling that the company needed to do whatever was necessary to meet customer's needs, and that her concerns were overblown because PA would defend its personnel from any action by

{00471565;M20-363;MAK }                                    6

the Kansas Board of Pharmacy.

31.     On or about April 17, 2019, Plaintiff Ling directly asked John Brian about his registration to dispense prescription medications in the state of Kansas.  His only response—he laughed.

32.     Plaintiff Ling responded by calling a representative of the Kansas Board of Pharmacy, who informed Plaintiff Ling that not only was it against Kansas law for unlicensed and unregistered personnel to be dispensing prescription medications—it was against Kansas law for such unlicensed and unregistered personnel to even be in the area of the pharmacy with access to yet-to-be dispensed drugs.

33.     After Plaintiff Ling learned from the representative of the Kansas Board of Pharmacy of the severity of PA's violations of Kansas law, she took a stand—literally— standing in the doorway of the drug access area of the pharmacy and stating to the out of town personnel lacking a Kansas license or registration that not only was their dispensing unlawful, but their mere presence in the drug access area of the pharmacy violated Kansas law. Again, her concerns were ignored.

34.     On or about April 25, 2019, an investigator from the Kansas Board of Pharmacy visited PA's Lenexa, Kansas pharmacy. On that day, John Brian was actively dispensing prescription medication as a pharmacy technician without a Kansas registration to do so when the investigator arrived. Mr. Brian responded by fleeing the dispensing area and hiding in a restroom to avoid detection of his violation of Kansas law.   Michael Varnado was present when the Board Inspector interviewed three pharmacy technicians, Mercedes McGhee, Sara Jasim and Choua Thou. Mr. Varnado coerced them to lie to the inspector and assert that John Brian's job duties at the

Lenexa pharmacy did not include filling bubble cards with prescription medications. When the pharmacy technicians expressed their discomfort with lying to the Board inspector, Mr. Varnado responded by ratifying their dishonesty to the state Board Inspector by stating that it would be okay, that PA would protect them in court, if necessary. Afterwards, another pharmacy technician, Cindy Czernik sent an email to Douglas Russell, stating that the events regarding the state Board Inspector did not align with her ethics.  Mr. Russell responded by having Mr. Varnado speak to Ms. Czernik, wherein Mr. Varnado told Ms. Czernik that she needn't worry, that PA would take care of patients first, and worry about the State Board of Pharmacy later. Almost immediately after the investigator from the Board of Pharmacy left PA's Lenexa, Kansas facility, Mr. Brian resumed dispensing medications in violation of Kansas law. Although CEO Russell and Director Varnado were informed of Mr. Brian's close call with the Kansas investigator, the merry-go-round of out-of-state unlicensed and unregistered personnel dispensing prescription medications continued unabated.

35.    The only noticeable change following the close call with the Kansas investigator was senior management's attitude toward Plaintiff Ling.  During her first five and a half years working as a pharmacist for PA, she received repeated commendations, particularly from CEO Russell, for her dedicated service beyond the duties assigned to her.  After that incident in April of 2019, all such positive feedback from senior management ended. It was objectively obvious, based on the circumstances, that senior management at PA suspected that Plaintiff Ling was the individual who had contacted the Kansas Board of Pharmacy regarding PA's unlawful activity.

36.    Early in 2018, both PA's CEO Douglas Russell and PA's Director of Operations Michael Varnado asked Plaintiff Ling to make weekly treks to dispense prescription medications at PA's Elmhurst, Illinois pharmacy.  Plaintiff Ling declined, explaining to both Russel and Varnado that she was not licensed to practice as a pharmacist in Illinois.

37.    On or about February 20, 2020, Plaintiff Ling's employment with PA was terminated without explanation.  Plaintiff Ling inquired to Mr. Duncan as to the reasons for PA's termination of her employment. She received no response.

38.    The true motivation for PA's termination of Plaintiff Ling's employment was in retaliation for her prior protests regarding PA's violations of Kansas law requiring pharmacists and pharmacy technicians to be licensed and registered with the Kansas Board of Pharmacy, and the belief by PA management representatives that she had informed the Kansas Board of Pharmacy of PA's non-compliance with Kansas law.

39.    Given that the lack of such licensing and registration were both violations of Kansas law and violations of Medicare and Medicaid conditions of payment, PA's termination of Plaintiff Ling constitutes both an unlawful retaliatory discharge under Kansas common law, and a violation of the anti-retaliation provisions of the FCA, 31 U.S.C. § 3730(h).

## COUNT ONE
## FALSE CLAIMS ACT RETALIATION
## IN VIOLATION OF 31 U.S.C. § 3730(h)

40.    Plaintiff Ling realleges and incorporates by reference the allegations previously alleged herein.

41.    Plaintiff Ling was employed by Defendant PA as a pharmacist from approximately April of 2014 through about February 20, 2020. During this period, Defendant PA controlled and had the right to control the manner and means by which Plaintiff Ling's pharmacy services were performed, including but not limited to, the duration of the relationship between the parties, the method of payment of wages and other compensation, and the hours of work.

42.    Pursuant to the right to control and the exercise of control over Plaintiff Ling, she and Defendant PA had an employee/employer relationship as envisioned by the definition of that relationship under the FCA.

43.    Plaintiff Ling reasonably and in good faith believed that Defendant PA's use of dispensing pharmacists and pharmacy technicians at its Lenexa, Kansas facility who did not have Kansas licenses violated Medicare and Medicaid regulations.

44.    In retaliation for Plaintiff Ling's efforts to stop Defendant PA from violating the conditions for Defendant PA's right to receive payments from the Medicare and Medicaid programs and thereby knowingly presenting false claims and knowingly using false statements for such claims, Plaintiff Ling's employment with Defendant PA was terminated effective about February 20, 2020.

45.    As a direct and proximate result of this unlawful termination Plaintiff Ling has suffered damages.

WHEREFORE, Plaintiff Ling respectfully requests this Court to award the following relief to Plaintiff Ling and against Defendant PA:

(1)    That, in accord with 31 U.S.C. § 3730(h)(2), Plaintiff Ling be awarded reinstatement with the same seniority status she

had at the time of her termination, two times the amount of back pay, interest on the back pay, and compensation for all special damages sustained as a result of her termination, which include, but are not limited to: damages associated with Plaintiff Ling's efforts to obtain alternative employment, attorneys' fees, expenses, and litigation costs.

(2)     Such further relief as this Court deems equitable and just.

## COUNT TWO
## RETALIATION IN VIOLATION OF KANSAS COMMON LAW

46.     Plaintiff Ling realleges and incorporates the above allegations as if fully set forth herein.

47.     Defendant PA's termination of Plaintiff Ling, as described herein, was in violation of Kansas public policy, and therefore constituted a tortuous wrongful termination.

48.     As a direct and proximate result of this unlawful termination in violation of public policy, Plaintiff Ling has suffered damages.

**WHEREFORE**, Plaintiff Ling respectfully requests this Court to award the following relief to Plaintiff Ling and against Defendant PA:

(1)     That Plaintiff Ling be afforded all damages resulting from her Kansas wrongful termination in violation of public policy tort claim, including all back pay, interest on back pay, compensation for all other economic, noneconomic, special, general, and compensatory damages, pain and suffering, punitive damages, and all damages

{00471565;M20-363;MAK }

11

sustained in an amount to be proved at trial along with prejudgment interest;

(2)     Such further relief that this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiff Ling hereby demands a trial by jury.

Plaintiff hereby designates the place of trial as the United States District Court for the District of Kansas, Kansas City Division in Kansas City, Kansas.

Respectfully submitted,

**ARNOLD, NEWBOLD, SOLLARS
& HOLLINS, P.C.**


By:     /s/ Mark A. Kistler
        Mark A. Kistler            KS #17171
        1100 Main Street, Suite 2001
        Kansas City, MO  64105
        Telephone:   816-421-5788
        Facsimile:   816-471-5574
        E-mail:        makistler@a-nlaw.com


*Attorneys for Plaintiff
Deborah Ling*