IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBORAH LING,

Plaintiff,

v.

PHARMACY ALTERNATIVES, LLC,

Defendant.

Case No. 2:21-cv-02414-HLT-TJJ

## MEMORANDUM AND ORDER

Plaintiff Deborah Ling brings two claims for retaliatory discharge against her former employer, Defendant Pharmacy Alternatives, LLC. Plaintiff argues Defendant terminated her employment after she complained about prescriptions being filled by pharmacists and pharmacy technicians not licensed or registered in Kansas. She claims her termination was in violation of the False Claims Act ("FCA") and Kansas public policy.

Defendant moves to dismiss both counts for failure to state a claim. Doc. 6. Because Plaintiff did not engage in protected activity under the FCA about which Defendant had notice, the Court dismisses Plaintiff's FCA retaliation claim. The Court also declines supplemental jurisdiction over her state-law claim.

## I.   BACKGROUND[1]

Defendant employed Plaintiff as a licensed pharmacist from 2014 until early 2020. Defendant operates a mail-order pharmacy in Lenexa, Kansas, that specializes in high-volume mail-order prescriptions to disabled individuals living in congregate living facilities. Most of the

---

[1] In keeping with the standard for evaluating motions to dismiss, the following facts are taken from the well-pleaded allegations of Plaintiff's complaint and accepted as true.

patients Defendant serves have their prescriptions dispensed in sealed bubble packs to facilitate the administration and tracking of the medications. For purposes of sealed bubble packs, the pharmacy staff member who places the pills into the bubble packs is who has "dispensed" the medication.

Most of Defendant's revenue comes from payments from Medicare and Medicaid. A condition for receiving payment from Medicare or Medicaid for filling prescriptions is compliance with certain federal and state laws, rules, and regulations. A prescription is covered under Medicare or Medicaid only if the medications are dispensed by licensed pharmacists and practitioners in accordance with the State Medical Practices Act. In Kansas, a person may not dispense prescriptions in the state without a Kansas pharmacist license or Kansas registration as a pharmacy technician.

At times before 2020, Defendant experienced staffing shortages at its Lenexa pharmacy. On several instances between 2016 and 2019, pharmacists who were based at Defendant's locations outside Kansas worked at the Lenexa facility dispensing medications. These individuals did not possess a Kansas license or registration to dispense prescriptions in Kansas. In 2018, Defendant's CEO and Director asked Plaintiff to make weekly trips to Defendant's Elmhurst, Illinois, pharmacy, but she declined because she was not licensed as a pharmacist in Illinois.

Defendant's staffing shortages became more severe in 2019. From January through June 2019, pharmacists and pharmacy technicians employed by Defendant would fly in from other states at the start of the week, spend three and a half workdays dispensing prescriptions at the Lenexa facility, and then fly home. These out-of-state pharmacists and technicians did not have Kansas licenses or registrations to dispense medication in the state.

From January through July 2019, Plaintiff repeatedly raised concerns to Defendant's CEO and Director about unlicensed or unregistered personnel dispensing prescriptions in Kansas in contravention of Kansas law. Plaintiff's concerns were ignored or brushed aside. The Director told Plaintiff that the company would do whatever was necessary to meet customer needs and that Plaintiff's concerns were overblown because Defendant would defend its staff from any action by the Kansas Board of Pharmacy.

On April 17, 2019, Plaintiff asked one of the out-of-state pharmacy technicians about his registration to dispense medications in Kansas. He laughed in response. Plaintiff then contacted the Kansas Board of Pharmacy, which told Plaintiff that it was against Kansas law for unlicensed or unregistered staff to dispense medications. It was even against Kansas law for unlicensed or unregistered staff to be in the same area of the pharmacy with undispensed drugs. After learning this, Plaintiff attempted to physically block the doorway of the drug-access area from out-of-state personnel. But her concerns were ignored.

On April 25, 2019, an investigator from the Kansas Board of Pharmacy visited the Lenexa facility. An out-of-state pharmacy technician was present at the time and responded by fleeing the dispensing area and hiding in the bathroom. Defendant's Director coerced three other pharmacy technicians to lie to the inspector about the job duties of out-of-state personnel. The Director told the staff that the company would protect them in court if necessary. After the visit from the inspector, out-of-state personnel continued dispensing medications.

After the April 2019 incident, Defendant's senior management had a change in attitude toward Plaintiff. Although she had previously received commendations for her work, the positive feedback ended in April 2019. Plaintiff alleges that it was "objectively obvious" that Defendant's senior management suspected Plaintiff of contacting the Kansas Board of Pharmacy.

3

On February 20, 2020, Defendant terminated Plaintiff's employment without explanation. Plaintiff alleges that she was terminated in retaliation for raising concerns about the out-of-state pharmacists and pharmacy technicians dispensing medications in violation of Kansas law, and for contacting the Kansas Board of Pharmacy. She alleges that her termination constitutes unlawful retaliation under the FCA and unlawful retaliation in violation of Kansas law.

## II.     STANDARD

A complaint survives a Rule 12(b)(6) challenge when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In undertaking this analysis, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.    ANALYSIS

Plaintiff asserts two claims stemming from her termination. First, she asserts retaliation under the FCA, 31 U.S.C. § 3730(h). Second, she alleges retaliatory termination in violation of Kansas public policy. Defendant moves to dismiss both claims.

4

### A.     Retaliation Under the FCA

The FCA creates civil liability for anyone who knowingly presents false claims for payment to the United States, or who makes a false statement material to a false claim for payment. *See generally* 31 U.S.C. §§ 3729-3733. The United States can bring a suit on its own under the FCA, or a private person (known as a relator or a whistleblower) may sue on behalf of the United States in what is known as a qui tam action. *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736 (10th Cir. 2019); *see also* 31 U.S.C. § 3730(a)-(b). To protect relators and whistleblowers, the FCA has an anti-retaliation provision. *See* 31 U.S.C. § 3730(h).

An FCA retaliation claim requires a plaintiff to plead facts that demonstrate "her employer knew of her efforts to stop a False Claims Act violation." *KeyPoint*, 923 F.3d at 767. More specifically, this requires a showing by a plaintiff that: "(1) she engaged in protected activity, (2) the defendant had been put on notice of that protected activity, and (3) the defendant retaliated against the plaintiff because of that activity." *Id.* at 764 (internal quotation and citation omitted).

Defendant argues that Plaintiff fails to plead facts sufficient to meet each element of an FCA retaliation claim. The Court does not reach Defendant's argument regarding causation because it finds Plaintiff has failed to plead facts sufficient to show that she engaged in protected activity under the FCA or that Defendant had notice of the same.

Protected activity for purposes of the FCA means "employees who take steps 'in furtherance of' either a qui tam claim <u>or</u> 'other efforts to stop 1 or more violations' of the [FCA]." *Id.* at 738 (quoting 31 U.S.C. § 3730(h)(1)). Thus, although a person does not need to pursue a qui tam action or be part of a government-initiated case, they must be acting to stop a violation of the FCA. *See id.* at 765 ("[W]histleblowers who lawfully try to stop one or more violations of the Act are protected, without regard to whether their conduct advances a private or government lawsuit

5

under the Act."). In the Tenth Circuit, the "boundaries of what constitutes protected efforts to stop a violation of the False Claims Act" are not fully defined. *Id.* at 766-67. But at a minimum, the alleged protected activity must convey a connection to the FCA. *Id.* at 767; *see also Williams v. CoreCivic, Inc.*, 2019 WL 7372002, at *13 (D. Kan. 2019) (citing *KeyPoint* for the premise that "protected activity [under the FCA] must have some nexus to that law").[2]

Here, the only facts alleged regarding Plaintiff's protected activity are that she "repeatedly raised concerns . . . about [Defendant] having unlicensed and unregistered personnel dispensing prescription medications in the state of Kansas <u>in contravention of Kansas law</u>," Doc. 1 at 6 (emphasis added), and that she contacted the Kansas Board of Pharmacy, *id.* at 7. But by her own allegations, Plaintiff was concerned about violations <u>of Kansas law</u>, not with trying to stop one or more violations <u>of the FCA</u>. This is insufficient to plead protected activity, which requires "conduct directed at stopping what [a plaintiff] reasonably believed to be fraud committed against the <u>federal</u> government." *Fakorede v. Mid-South Heart Ctr., P.C.*, 709 F. App'x 787, 789 (6th Cir. 2017); *see also United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 60 (1st Cir. 2017) ("Thus, we have rejected, at even the motion to dismiss stage, an FCA retaliation claim to the extent that it was based on an employee's allegations that he had reported 'to his superiors' that his employer was 'fail[ing] to meet regulatory standards . . . required for reimbursement by Medicare and Medicaid.'" (quoting *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237 (1st Cir. 2004)); *compare United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 202 (4th Cir. 2018) (finding protected activity where "complaints did not merely express concern about

---

[2] Because the Tenth Circuit has not yet "defined the boundaries" of what constitutes protected activity, other courts in the Tenth Circuit have looked to other circuits for guidance. *See, e.g.*, *Interstate Med. Licensure Compact Comm'n v. Bowling*, 2021 WL 3024738, at *21 (D. Colo. 2021). As these courts have recognized, other circuits employ an "objectively reasonable belief" standard that asks whether the plaintiff has pleaded sufficient facts to show that she had a reasonable belief that her employer was violating the FCA, and that she acted to stop that violation. *See id.*; *see also Singletary v. Howard Univ.*, 939 F.3d 287, 296 (D.C. Cir. 2019).

regulatory non-compliance, but instead alleged specific illegal, fraudulent conduct against the government").[3]

Plaintiff does allege that the majority of Defendant's revenue is from payments from Medicare and Medicaid. She also alleges that federal regulations require that medications be dispensed by licensed pharmacists or other authorized practitioners in accordance with the State Medical Practices Act to qualify for Medicare or Medicaid reimbursement. Doc. 1 at 2-3. But other than these general statements, there are no factual allegations that Plaintiff specifically raised concerns about Defendant's billing practices to Medicare or Medicaid to Defendant. That Plaintiff has since found a way to link her complaints about compliance with state law to a possible FCA violation does not demonstrate that she engaged in protected activity under the FCA. *See Fakorede*, 709 F. App'x at 790 ("While this may be true [that the defendant submits claims to Medicare], there are no underlying allegations to support the conclusion that Fakorede himself, at any time prior to his termination, understood the connection between the FCA and other federal law, that his activity was motivated by this connection, or that even a single Medicare claim was submitted by Mid-South during that time.").

Plaintiff relies on *Baldwin v. CoreCivic of. Tennessee, LLC*, 2020 WL 1952521 (D. Kan. 2020). But that case is distinguishable. There, the plaintiff reported his employer to the Department of Labor for not compensating workers in accordance with its federal contract. *Id.* at *1, *7. By contrast, Plaintiff has not pleaded any facts to suggest that she linked her complaints about Kansas

---

[3] Abrogation of *Karvelas* was recognized by *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020), but on grounds not relevant here. Additionally, as the court noted in *Booker*, *Karvelas* was decided before the FCA was amended in 2009 and 2010 to extend its retaliation provision to include efforts to stop violations of the FCA. *See Booker*, 847 F.3d at 59 n.8; *see also KeyPoint*, 923 F.3d at 765. But *Karvelas* "construed the pre-amendment provision as covering such activities," *Booker*, 847 F.3d at 59 n.8, and thus remains persuasive authority regarding protected activity post-amendment. The Court also notes that the Tenth Circuit has relied on both *Booker* and *Grant*. *See KeyPoint*, 923 F.3d at 767.

7

licensing requirements to any claim for payment from the federal government. *Baldwin* therefore is not persuasive in Plaintiff's favor.

The complaint also includes a statement that Plaintiff "reasonably and in good faith believed" that Defendant's reliance on out-of-state pharmacists and pharmacy technicians violated Medicare and Medicaid requirements. Doc. 1 at 10. But there are no facts supporting this conclusory statement. More importantly, even if this is true, there are no facts demonstrating that she conveyed this belief to Defendant. *See KeyPoint*, 923 F.3d at 767 (stating that an employee's FCA retaliation complaint "must allege facts that show her employer knew of her efforts to stop a False Claims Act violation"). "[T]o provide actual or constructive knowledge, employees must connect the alleged misconduct to fraudulent or illegal activity or the FCA." *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1168 (8th Cir. 2019).

Here, there are no facts alleged that Plaintiff linked her concerns about state licensure requirements to fraudulent activity under the FCA. Her complaints to management and contact of the Kansas Board of Pharmacy only raised a state licensing issue. Plaintiff even alleges that Defendant's management tried to assuage her concerns by stating that Defendant "would defend its personnel from any action by the Kansas Board of Pharmacy," Doc. 1 at 6-7, which suggests that Defendant was only put on notice of potential issues with Kansas licensing officials, not with fraudulent or illegal activity under the FCA. This is insufficient to state an FCA retaliation claim. *See Strubbe*, 915 F.3d at 1168. ("Reporting a license violation to the State does not tell CCMH that these employees believe it is acting fraudulently . . . ."). Accordingly, Plaintiff's FCA claim fails for lack of notice to Defendant of any protected activity and is dismissed.[4]

---

[4] Defendant argues that Plaintiff has not even alleged that it actually submitted false claims to the federal government. Doc. 7 at 6. Plaintiff contends that the inference is there and to the extent not, she "requests leave to amend her Complaint to add the (perfunctory) allegation that in order for Defendant to derive most of its revenue from Medicare and Medicaid, Defendant made submission for such payments, some of which were for

### B. Retaliation in Violation of Kansas Public Policy

Turning to Plaintiff's state-law retaliation claim, the Court first must consider its jurisdiction to hear this claim, especially in light of the dismissal of Plaintiff's FCA claim. The complaint states that this Court has jurisdiction over Plaintiff's state-law claim under 31 U.S.C. § 3732(b). That provision, also found in the FCA, states:

> (b) Claims under State Law. – The district courts shall have jurisdiction over any action brought under the laws of any State <u>for the recovery of funds paid by a State or local government</u> if the action arises from the same transaction or occurrence as an action brought under section 3730.

31 U.S.C. § 3732(b) (emphasis added). Plaintiff's state-law claim, however, does not seek recovery of funds paid by a state or local government. Plaintiff seeks damages from Defendant, a private company, for back pay, compensatory damages, and punitive damages stemming from her termination. Doc. 1 at 11-12. Thus, the FCA does not grant this Court jurisdiction over Plaintiff's state-law employment claim.[5]

Accordingly, the only other apparent jurisdictional basis for Plaintiff's state-law claim is 28 U.S.C. § 1367, supplemental jurisdiction. The Court had jurisdiction over Plaintiff's FCA

---

prescriptions dispensed by the unlicensed individuals identified in Ms. Ling's extant Complaint." Doc. 10 at 11. The Court declines to grant leave to amend for three reasons. First, Plaintiff could have amended as of right and chose instead to litigate the motion. Fed. R. Civ. P. 15. Second, informal requests to amend made in a response to a motion to dismiss are not proper. *See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014); *see also* D. Kan. Rule 15.1(a). Third, amending to add allegations that Defendant actually did submit false claims based on prescriptions filled by out-of-state pharmacists would not cure Plaintiff's complaint because there are no facts alleged or proposed that Plaintiff actually raised the concern of false claims to Defendant.

[5] The complaint also alleges that Plaintiff is a resident of Kansas and Defendant is a Kentucky LLC. Doc. 1 at 1. Depending on the citizenship of Defendant's members, *see Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015), it is possible that the parties are diverse. But the complaint does not identify the citizenship of Defendant for purposes of diversity jurisdiction or state the amount in controversy. The complaint does not even assert diversity jurisdiction, nor does the civil cover sheet. *See* Doc. 2. Accordingly, Plaintiff has not demonstrated diversity jurisdiction exists. *See United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995) ("The party seeking the exercise of jurisdiction in his favor must allege . . . the facts essential to show jurisdiction." (internal quotation and citation omitted)).

retaliation claim under 31 U.S.C. § 3732(a), which permits any action under § 3730 to be brought in federal court. The Court also had jurisdiction under 28 U.S.C. § 1331, federal question. *See* Doc. 1 at 3. Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

But a court may decline supplemental jurisdiction if an exception under 28 U.S.C. § 1367(c) applies. *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995). One of those exceptions is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, a court also considers judicial economy, convenience, and fairness. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013).

Having dismissed Plaintiff's FCA retaliation claim, only Plaintiff's state-law retaliation claim remains. Based on the considerations outlined above and the early stage of this lawsuit, the Court declines to continue exercising supplemental jurisdiction over that claim and dismisses it without prejudice.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss (Doc. 6) is GRANTED IN PART. The Court DISMISSES Plaintiff's FCA retaliation claim for failure to state a claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim. The state-law claim is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: January 4, 2022                          /s/ *Holly L. Teeter*
                                                              HOLLY L. TEETER
                                                              UNITED STATES DISTRICT JUDGE